311 Ga. 301
FINAL COPY


S21A0121. VANN v. THE STATE.


ELLINGTON, Justice.

An Appling County jury found James Vann guilty of malice

murder and other crimes in connection with the shooting death of

Tiesha Davis.[1] On appeal, Vann contends that his trial counsel was

---

[1] Davis was shot to death on August 24, 2012. An Appling County grand jury indicted Vann for malice murder (Count 1), felony murder (Count 2), aggravated assault (Count 3), possession of a firearm during the commission of a felony (Count 5), and possession of a firearm by a convicted felon (Count 6) in connection with Davis's death. Vann was also indicted for aggravated assault (Count 4) by pointing a gun at his child and Karen Moore. Vann was tried in August 2013, and the jury found him guilty on all counts. The trial court sentenced Vann to serve life in prison without parole for malice murder (Count 1); 20 years in prison for each count of aggravated assault (Counts 3 and 4) to run concurrent with each other but consecutive to Count 1; and five years in prison for each firearm possession count (Counts 5 and 6) to run concurrent with each other but consecutive to Counts 1, 3, and 4. The felony murder count (Count 2) was vacated by operation of law. Vann filed a timely motion for new trial in 2013, which he twice amended in 2019. Following a hearing, the trial court entered an order on June 11, 2020, granting in part and denying in part Vann's motion for new trial. More specifically, the trial court vacated the conviction and sentence for aggravated assault (Count 3) because that count merged with the malice murder conviction (Count 1) and vacated the conviction and sentence for possession of a firearm by a convicted felon (Count 6) because the State had not introduced a copy of the prior conviction at trial, but otherwise denied the motion. Vann filed a timely notice of appeal. The case was docketed in this Court to the term beginning December 2020 and submitted for a decision on the briefs.

ineffective in failing to request a jury instruction on the lesser offense of voluntary manslaughter. Because Vann has failed to show that his trial counsel was constitutionally deficient in not requesting the instruction, we affirm.

1. The evidence presented at trial showed that on the morning of August 24, 2012, Davis drove to Vann's residence approximately four miles outside of Baxley to pick up her infant son. Davis called the police at approximately 10:05 a.m. after Vann, the child's father, refused to give her the baby. An Appling County Sheriff's deputy responded to the call and spoke with Vann, who returned the child to Davis.

While Davis was placing the baby in a car seat, Vann came outside and asked Davis and the deputy to leave. She and the deputy complied, drove toward Baxley, and then pulled their vehicles off the side of the road, where the deputy finished taking Davis's statement. While Davis was speaking to the deputy, Vann drove by.

Davis returned to her home in Baxley, where her mother Karen Moore and her cousin Marquetta White were waiting for her in

2

White's car, which was parked in the yard. Moore got out of White's car and walked over to Davis's car when Davis arrived. Davis then handed the baby to Moore.

Moore testified that, after she took the child, Vann pulled up in a car, got out, and said, "What's poppin', B? You're going to learn." Moore saw Vann reach into his pants, pull out a gun, and shoot Davis several times. After shooting Davis, Vann put the gun against Moore's head and the child's head. White testified that, from her vantage point in the car, she saw Vann pull up, get out of his car, and point a gun, and she then heard gunshots. White heard Vann comment, "That's for calling the folks on my house." After Vann drove away, White saw that Davis had collapsed face down.

Davis's brother, Tremaine Richburg, testified that he was inside the house when he heard Davis arrive. When he heard Moore scream, he went to the door. He saw Davis lying on the ground and Vann holding a gun. According to Richburg, he ran back into the house, grabbed his gun, came out on the porch and shot at Vann's car as Vann drove away. He chased after Vann on foot and then

called 911 shortly after 11:00 a.m. with his prepaid cell phone. According to Richburg, he then headed to a nearby IGA grocery store to put "minutes" on his cell phone.

The responding officers found Davis dead at the scene. The medical examiner testified at trial that Davis had died as a result of multiple gunshot wounds.

While officers were working the crime scene they received a report about an agitated man at the IGA. An officer responding to the report found an agitated Richburg walking down the sidewalk. Richburg refused the officer's request to stop and talk, but several more officers soon arrived and detained Richburg.

That same morning, Bryan Holmes, Moore's cousin, pulled up to a stop sign in his car when he noticed in his rear view mirror that a car was speeding toward him from behind. The car went around Holmes and turned left onto City Circle Road. Holmes saw that Vann was driving the vehicle. Holmes turned left onto City Circle Road behind Vann, and he saw Vann make a right turn onto a dirt road. Holmes saw Vann stop and throw what appeared to be a gun

4

into the woods. Holmes stopped at a nearby gas station and called the police to report what he had just seen. Police later searched the area and recovered a magazine made to fit in either a .38-caliber or a 9mm pistol. Three 9mm shell casings were recovered at the crime scene.

When officers took Vann into custody later that day, they noticed that he had a small, round wound on his lower back. The passenger side window of Vann's car was "busted out," an officer testified, and there was blood on the back of the driver's seat.[2]

2. Vann claims that his trial counsel was constitutionally ineffective in failing to request a jury instruction on voluntary manslaughter as a lesser offense of murder.

> To establish that his trial counsel was constitutionally ineffective, [Vann] must prove both deficient performance by counsel and resulting prejudice. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To show that his lawyer's performance was deficient, [Vann] must demonstrate that the lawyer performed [her] duties in an objectively unreasonable

---

[2] Vann does not challenge the sufficiency of the evidence to support his convictions. This Court no longer considers as a matter of course the sufficiency of the evidence in non-death penalty appeals in which it is not an enumerated error. See *Davenport v. State*, 309 Ga. 385, 399 (4) (b) (846 SE2d 83) (2020).

way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-690. This is no easy showing, as the law recognizes a "strong presumption" that counsel performed reasonably, and [Vann] bears the burden of overcoming this presumption. Id. at 689. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

*Gardner v. State*, 310 Ga. 515, 518 (2) (852 SE2d 574) (2020) (citations and punctuation omitted).

Vann's trial counsel testified at the hearing on the motion for new trial. Her defense theory was that Richburg pulled a gun and started shooting, and that Davis was caught in the crossfire between Vann and Richburg. Consistent with this theory of defense, counsel requested jury instructions on accident and involuntary manslaughter. According to counsel, she did not request a charge on voluntary manslaughter because she had discussed her theory of defense with Vann and the charge did not "fit" with that theory. She also did not believe that the defense could show the "passion" required by a voluntary manslaughter defense in light of the lapse

6

of time from the interaction between Vann and Davis at Vann's home and the shooting at Davis's home.[3]

During her closing at trial, trial counsel argued among other things that the testimony of the witnesses who claimed to have seen the shooting was not credible because White's line of sight was obscured and Moore's testimony was not consistent with White's testimony or Richburg's testimony. She also argued that Richburg fired at Vann and then ran from the scene without telling anyone where he was going or even asking his mother if she was okay.

Vann acknowledges that trial counsel's decision not to request a charge on voluntary manslaughter was a matter of trial strategy, but he contends that counsel's decision was unreasonable because at

---

[3] OCGA § 16-5-2 (a) provides:

A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

7

the charge conference the trial court refused Vann's requests to charge the jury on the lesser offense of involuntary manslaughter and the defense of accident. Vann argues that when counsel realized that the legal principles underlying her theory of the case would not be charged to the jury, and given that the evidence showed that Vann shot Davis in front of two people who knew both him and her, counsel should have adapted her theory of defense accordingly.

Notwithstanding Vann's arguments, trial counsel's decision not to request a charge on voluntary manslaughter did not constitute constitutionally deficient performance. "[P]ursuit of an all-or-nothing defense is generally a permissible strategy." *Velasco v. State*, 306 Ga. 888, 893 (3) (b) (834 SE2d 21) (2019). A competent attorney could have assessed that a voluntary manslaughter defense was either unavailable or weak because the evidence did not show, or only questionably showed, that Vann had been seriously provoked by Davis when they interacted at Vann's home. See *Jessie v. State*, 294 Ga. 375, 377 (2) (a) (754 SE2d 46) (2014) (counsel's calculus that the evidence did not support the "serious provocation" required to

8

justify a voluntary manslaughter charge was not unreasonable). The evidence did show, on the other hand, an opportunity for Vann to cool down between the alleged provocation and the shooting because Vann had to drive to Baxley to get to Davis's home, and Davis did not drive straight home from Vann's house but pulled off the side of the road so that she could complete her statement to the deputy. See *Barron v. State*, 297 Ga. 706, 708 (2) (777 SE2d 435) (2015) (voluntary manslaughter instruction not warranted where the evidence showed, among other things, a substantial amount of time for the defendant to cool off between the alleged provocation by the victim and the subsequent attack). A charge on voluntary manslaughter, if available, also would have been inconsistent with the theory of defense that Richburg fired the fatal shots. See *Gaston v. State*, 307 Ga. 634, 637 (2) (837 SE2d 808) (2020) ("[I]t is rarely an unreasonable strategy to not pursue defenses that logically conflict.").

Vann has not shown that his trial counsel's performance was constitutionally deficient. Therefore, the trial court did not err in

9

denying his motion for new trial on the ground of ineffective assistance of counsel. See *Gardner*, 310 Ga. at 519-520 (2).

*Judgment affirmed. All the Justices concur.*

Decided April 19, 2021.

Murder. Appling Superior Court. Before Judge Harrison.

*Robert L. Persse*, for appellant.

*Jacqueline L. Johnson, District Attorney, Jan Kennedy, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark S. Lindemann, Assistant Attorney General*, for appellee.